UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUANN BUSTAMANTE,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No.: C08-667 CRD<br><br>ORDER RE: SOCIAL SECURITY<br>DISABILITY APPEAL |

      Plaintiff Luann Bustamante appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or the "Act"), 42 U.S.C sections 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. FACTS AND PROCEDURAL HISTORY

      Plaintiff is a fifty-two-year-old woman, forty-two years old at the alleged disability onset date. She has an eleventh grade education and has work experience as a waitress and cashier.

      Plaintiff applied for SSI and DIB in February 2002, alleging disability since April 1999. Her claim was denied initially and upon reconsideration, and she timely requested an ALJ hearing. On May 2, 2005, a *de novo* hearing was held before ALJ Filion. The ALJ heard testimony from Plaintiff, who was represented by counsel. The ALJ rendered an unfavorable

ORDER - 1

decision on August 24, 2005. Plaintiff requested Appeals Council review; the Appeals Council remanded the case to the same ALJ for additional administrative proceedings. The Appeals Council directed the ALJ to: consider additional evidence submitted; give further consideration to the nature and severity of claimant's impairments, providing rationale for conclusions reached; consider obtaining evidence from a medical expert and a vocational expert; give further consideration to all opinion evidence and provide a rationale for accepting or rejecting such evidence; and provide Ms. Bustamante an opportunity for a second hearing. AR 928.

On December 7, 2006, ALJ Filion held a second hearing, taking testimony from Plaintiff, who was represented by David Oliver, Esq., and a medical expert, Dr. Bruce Olson, Ph.D. Administrative Record ("AR") at 1250-1278. A vocational expert was present but did not testify. AR 1250-51. On September 12, 2007, the ALJ again issued an unfavorable decision. Thereafter, Appeals Council review was denied, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On May 15, 2008, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas*

*v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. THE DISABILITY EVALUATION

As the claimant, Ms. Bustamante bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] In the present case, the ALJ found that Plaintiff likely had engaged in substantial gainful activity since the alleged onset of the disability, but deferred the finding and proceeded with the evaluation. AR 25, Finding 2. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ found Plaintiff has the severe impairments of "depressive disorder NOS [not

---

[1]Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

otherwise specified], rule out cognitive disorder NOS, rule out malingering, substance abuse addiction disorder, mild lymphadema, and seizure disorder (pseudo-seizures)." AR 25, Finding 3. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*. Here, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment. AR 27, Finding 4.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ in this case found Plaintiff "has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently, sit at least six hours in an eight hour workday, and stand/walk at least six hours in an eight hour day. She cannot work around heights or dangerous machinery. She can perform simple, repetitive tasks with no public contact." AR 29, Finding 5.

The ALJ next found that Plaintiff is not capable of performing her past relevant work as a waitress or cashier because the jobs required public contact. AR 32, Finding 6. If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded. In this case, the ALJ determined that Plaintiff could perform simple, unskilled light work and therefore concluded Plaintiff is not disabled as defined in the SSA. AR 33.

///

# V. ISSUES ON APPEAL

Plaintiff presents the following principal issues on appeal:

1. Did the ALJ err in not finding her shoulder limitation a severe impairment?
2. Did the ALJ err in assessing lay witness statements?
3. Did the ALJ err in assessing Plaintiff's RFC?
4. Did the ALJ err in not consulting a vocational expert?

# VI. DISCUSSION

*A.  The ALJ did not err in assessing Plaintiff's shoulder limitation.*

Plaintiff asserts that the ALJ erred in not finding her frozen shoulder limitation to be a severe impairment at step two of the sequential evaluation and account for it in her residual functional capacity assessment. The step two inquiry is meant to exclude the most minor of impairments. It is a screening device used to eliminate cases that do not meet the threshold requirement of severity. *See Bowen v. Yuckert*, 482 U.S. 137, 154 (1987). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (*quoting* Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Id*. (*citing Bowen*, 482 U.S. at 153-54).

Plaintiff argues that the ALJ failed to address the frozen shoulder limitations identified by the nonexamining state agency physician and that the ALJ did not base rejection of Dr. Crossland's opinions on clear and convincing evidence. Dkt. 12 at 11-13.

Upon reviewing Plaintiff's medical records, the nonexamining state agency physician checked a box on a form indicating that Plaintiff should never reach overhead with her right arm due to residual effects of breast cancer. AR 605. An ALJ is required to consider all medical opinions and explain the weight assigned. SSR 96-8p. The ALJ did not note this specific finding. Defendant argues the ALJ's omission of any discussion of the opinion is harmless error because 1) the ALJ did note limitations that take into account lymphedema; 2) there is evidence that Plaintiff has the ability to use her right arm; 3) the record contains inconsistencies in

examination findings; and 4) Plaintiff's credibility regarding her alleged right shoulder limitations is poor. Dkt. 13 at 3-5.

The ALJ discussed Plaintiff's shoulder concerns in detail:

> The claimant alleges that she has damage to her right shoulder as a residual of treatment for breast cancer. She did undergo lymph node dissection in 1995. Giving her the benefit of the doubt, I accept the diagnosis of lymphedema, a known possible complication of lymph node dissection even though there is little in the way of supporting medical evidence. The limitations established in this decision take into account lymphedema.
>
> The claimant carries a diagnosis of frozen shoulder and often presents with her right arm in a sling (e.g. 43F/28), or clutched to her side (43F/57). The prior decision discussed the many examination inconsistencies involving the right upper extremity. That pattern continues in the subsequent records. For example, in October 2005 a neurologist noted that on direct testing the claimant could not move the right side and would not give full effort on strength testing, yet "on spontaneous observation she appeared to move that side very well with normal dexterity, including tying her shoelaces and shuffling her appointment cards" (43F/73). The claimant presented to the emergency department in March 2006 with a decreased level of consciousness after ingesting Baclofen. She was uncooperative with motor strength examination but "she does move all four limbs spontaneously and rolls away from examiner" (45F/6).
>
> In July 2006 the claimant was seen for a possible adverse lithium reaction. Her examination findings at that time, including neurological and extremities, were within normal limits (46F/5). On psychological evaluation in January 2007, Dr. Cook observed that "the claimant was holding her right arm and not using it during our session, however she did readily use her right arm/hand to open the door on leaving the office suite" (47F/7-8). Given the evidence that the claimant has the ability to use the right upper extremity and the inconsistencies in examination findings, I conclude that the frozen shoulder is not medically established.

AR 27. Thus, although the ALJ discussed Plaintiff's shoulder, the state agency opinion was not noted. To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 31 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* The ALJ can meet this burden by setting out a detailed and thorough summary of

the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751 (internal citations omitted). Here, the ALJ specifically noted that Plaintiff "carries a diagnosis of frozen shoulder" before discussing the evidence she believed discredited that diagnosis. Plaintiff does not dispute the ALJ's findings regarding her lack of credibility and malingering regarding her shoulder complaints. The Court finds that the ALJ's stated reasons for not finding the shoulder impairment severe at step two are clear and convincing and based on substantial evidence in the record. Accordingly, the ALJ did not err in this regard.

      *B.     The ALJ did not err regarding lay witness statements.*

Plaintiff alleges the ALJ erred by rejecting lay witness' statements without articulating reasons. Plaintiff argues that although the ALJ addressed the lay witness statements in the first decision, they were not directly addressed in the second decision. Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (internal citations omitted).

Plaintiff is correct that the ALJ addressed five of the statements in the first decision but not the second decision; however, in accordance with the Appeals Council remand instructions, the ALJ also addressed the lay witness evidence provided by Ms. O'Daniell, in the second opinion. AR 927-28. The ALJ noted that contrary to the Appeals Council's finding Ms. O'Daniell's report was included in the record, but it was not numbered. AR 22. In the second decision, the ALJ assigned Ms. O'Daniell's reports limited weight, explaining:

> In February 2003, Emily O'Daniell, MSW, filled out a DSHS form in which she indicated moderate to marked limitations in many social and cognitive factors, based on a diagnosis of depression (36F). In March 2004, Ms. O'Daniell completed a medical source statement form in which she checked moderate to marked limitations in all functional areas (29F). I accord limited weight to Ms. O'Daniell's reports, as they are based on the claimant's subjective complaints and such complaints lack credibility.

AR 31. The Court finds the ALJ's stated reasons for giving limited weight to Ms. O'Daniell's reports "germane" and therefore not in error. *Lewis*, 236 F.3d at 511.

ORDER - 7

With respect to the other lay witness statements, the ALJ's second decision referenced and incorporated the first decision: "[w]hile the decision issued on August 24, 2005 has been vacated by the action of the Appeals Council, it remains in the record as a discussion and summary of the evidence and is hereby incorporated into this decision for that purpose." AR 22. The first ALJ decision discussed the lay witness statements of Mr. Bustamante, Plaintiff's 13-year-old daughter, H.R. Brock, Mr. Weisenberger and Mr. Woods. AR 920. However, the ALJ afforded the statements minimal weight, explaining: "[s]ome of the symptoms described by these witnesses are unusual in the context of a seizure disorder and are more likely associated with medication drug abuse. I note that Dr. Crossland's records show that the seizures are related to taking Soma. Their assessments cannot be relied on given the context and other contradictory evidence in the file." *Id*. The Court finds the ALJ's decision to give minimal weight to the lay witness statements based on "germane" reasons. *Lewis*, 236 F.3d at 511. The failure of the ALJ to specifically repeat the analysis from the first decision is harmless error at most. The ALJ incorporated the first decision into the second, and the Appeals Council specifically required the ALJ to further address the lay evidence by Ms. O'Daniell (AR 928). Accordingly, the ALJ did not err.

    *C.     The ALJ did not err in assessing Plaintiff's residual functional capacity.*

Plaintiff argues that the RFC determination is based on improper assessments of her psychological and physical impairments, and that the conclusion that she could perform other work is not based on substantial evidence.

The ALJ found Plaintiff has severe impairments of "depressive disorder NOS, rule out cognitive disorder NOS, rule out malingering, substance abuse addiction disorder, mild lymphadema, and seizure disorder (pseudo-seizures)." AR 25. The ALJ explained the RFC determination:

> I have assessed the limitations in Finding 5 after giving the claimant the greatest benefit of the doubt. The limitation to light work activity is based on the diagnosis of lymphadema. The avoidance of heights and dangerous machinery is precautionary, given the claimant's pseudo seizures and history of substance

> abuse. The claimant spins so many tall tales that work with the public would not
> be wise. I accept Dr. Cook's opinion that she can perform simple tasks.

AR 32. The ALJ concluded Plaintiff "has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently, sit at least six hours in an eight hour workday, and stand/walk at least six hours in an eight hour day. She cannot work around heights or dangerous machinery. She can perform simple, repetitive tasks with no public contact." AR 29. The ALJ found Plaintiff is not capable of performing her past relevant work as a waitress or cashier because those jobs required public contact. AR 32. As discussed above, the Court finds the ALJ did not err in assessing Plaintiff's severe impairments at step two, including her right extremity functioning and the impacts of pseudoseizures.

Plaintiff also asserts the ALJ erred in not considering how her asthma and chronic obstructive pulmonary disease affect her functioning. The Court does not agree. The ALJ discussed Plaintiff's breathing difficulties, noting, "[t]he claimant has a history of asthma and is a heavy smoker. Her medications include Albuterol and Flonase (45F/6). However, there is no indication that the asthma causes more than minimal functional limitations. On examination in April 2006 her lungs were clear to auscultation (40F/3). I conclude the asthma/chronic obstructive pulmonary disease is not a severe impairment. In the alternative, that condition does not erode the occupational base for light work." AR 26. Thus, the ALJ based the conclusion on substantial evidence in the record in assessing the impact of Plaintiff's breathing difficulties on her RFC. The Court finds no error in this regard.

Plaintiff also asserts the RFC assessment is improper because the ALJ failed to incorporate properly her concentration and memory problems. In support, Plaintiff cites findings by Dr. Carsrud (AR 487-90), Dr. Hellekson (AR 978), Ms. O'Daniell (AR 974), and the GAF score of 45 assigned by Dr. Cook, as well as Dr. Widlan's evaluation submitted to the Appeals Council after the hearing (AR 1222). The ALJ found, "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties. In so concluding, I am giving the claimant the benefit of the doubt, as there are no valid psychological findings in support of her allegations of memory loss." AR 29. Based thereon, the ALJ limited Plaintiff to performing unskilled work involving "simple and repetitive tasks." *Id.* The Court finds the ALJ's

ORDER - 9

assessment is based on substantial evidence in the record and the limitation to simple and repetitive tasks accounts for the moderate mental limitations found by the ALJ; as such, it is not in error.

*D. The ALJ did not err in not obtaining vocational expert testimony.*

Plaintiff asserts that the ALJ erred because a vocational expert was not consulted to testify about the number of jobs available that she could perform. At step five, the ALJ used the Medical-Vocational Guidelines ("guidelines" or "grids") in making the determination that Plaintiff could perform unskilled work involving simple, repetitive tasks with limited public contact, at a light level of work. AR 32-33. Plaintiff challenges the ALJ's use of the grids without consulting a vocational expert ("VE"), arguing that because of her nonexertional limitations of pain, limited right arm functioning, concentration difficulties, inability to remember detailed instructions, reduced intellectual/cognitive functioning and mental impairments, VE consultation was required. Dkt. 12 at 18-21. Also, as discussed above, Plaintiff maintains that medical and psychological evidence was not properly analyzed and that if it were, additional severe limitations would have been found, also mandating VE testimony. Plaintiff asserts that the ALJ's finding of a "moderate" limitation in concentration and resulting limitation to simple repetitive tasks and limited public contact are significant nonexertional impairments requiring use of a VE under SSR 85-15.

"There are two ways for the Commissioner to meet his Step Five burden: (1) the testimony of a VE; or (2) by reference to the Medical-Vocational Guidelines... Where the claimant has significant non-exertional impairments, however, the ALJ cannot rely on the Guidelines." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (citations omitted). An ALJ's use of the grids is permissible where the grids "completely and accurately represent a claimant's limitations, such that a claimant is able to perform the full range of jobs in a given category." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 404.1560(b)(3); Part 404, Subpart P, App. 2, Rule 200(e). "However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ

should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Tacket*, 180 F.3d at 1102.

In this case, the ALJ concluded that Plaintiff's nonexertional limitations have little or no effect on the occupational base of unskilled work. AR 33. "[A] vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). Here, there is nothing in the record that suggests a limitation to simple repetitive work with limited public contact would overtake Plaintiff's ability to perform the unskilled work the ALJ found her capable of performing. Based on the evidence discussed in the above sections, the Court finds substantial evidence in the record supports the ALJ's conclusion that Plaintiff's nonexertional limitations were not sufficiently severe such that they significantly affect her ability to work.

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and the case is DISMISSED.

DATED this 13th day of January, 2008.

Carolyn R. Dimmick
United States District Judge